IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| M.A. YAH,<br><br>                    Plaintiff,<br><br>        vs.<br><br>CHURCH & DWIGHT CORPORATION,<br><br>                    Defendant. | **8:22CV245**<br><br>**MEMORANDUM AND ORDER** |

Plaintiff M.A. Yah ("Plaintiff") filed a Complaint on July 7, 2022.  Filing No. 1.
Plaintiff has been given leave to proceed in forma pauperis.  Filing No. 5.  The Court now
conducts an initial review of Plaintiff's claims to determine whether summary dismissal is
appropriate under 28 U.S.C. § 1915(e)(2).

## I.  SUMMARY OF COMPLAINT

Plaintiff brings this civil action against Defendant Church & Dwight Corporation
("Church & Dwight"), the manufacturer of Arm & Hammer Baking Soda.  Plaintiff asserts
that Church & Dwight should be held liable for failing to include a warning on the package
regarding the dangers and consequences of mixing baking soda with powder cocaine to
manufacture crack cocaine.  *See* Filing No. 1 at 8, ¶¶ 53, 54.  Plaintiff claims that Church
& Dwight have "**never** made it clear to users at <u>anytime</u> or in <u>any form</u> what was the
authorized, intended, or proper manner to use Arm & Hammer Baking Soda" because
Church & Dwight marketed their product as "'All Purpose Baking Soda' on the boxes of
Arm & Hammer baking [soda], misleading users into believing that their product was safe
to mix with anything for any purpose."  *Id.* at 2–3, ¶¶ 8, 14 (emphasis in original).

Plaintiff alleges that he first used Arm & Hammer Baking Soda with powder cocaine to make crack cocaine in 1981.  Plaintiff alleges that since that time, he has been addicted to crack cocaine, has committed crimes and served prison time as a result of his addiction, and his family has suffered from the effects of his and their own addictions to crack cocaine.  Plaintiff seeks damages and injunctive relief against Church & Dwight because

> Plaintiff wholeheartedly feels that he would not have tried the highly addictive drug, had Defendant Church and Dwight Corporation took heed to the "Duty to Warn" and put an adequate warning label on their product, forewarning the public that mixing cocaine and Arm & Hammer Baking Soda would cause cocaine to become 100 times more addictive, instead of advertising daily that Arm & Hammer Baking Soda was a safe and friendly household product that could be used for "All Purposes."

Id. at 3, ¶ 18.

## II.  APPLICABLE LEGAL STANDARDS ON INITIAL REVIEW

The Court is required to review in forma pauperis complaints to determine whether summary dismissal is appropriate.  *See* 28 U.S.C. § 1915(e).  The Court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2)(B).

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)).  Plaintiffs must set forth enough factual allegations to "nudge[ ] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also*

2

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"A pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted). This means that "if the essence of an allegation is discernible, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Stone v. Harry,* 364 F.3d 912, 915 (8th Cir. 2004). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980).

### III. DISCUSSION OF CLAIMS

#### A. Jurisdiction

As an initial matter, the Court must determine whether subject-matter jurisdiction is proper. *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). A plaintiff must sufficiently state a claim for relief that contains, "a short and plain statement of the grounds for the court's jurisdiction, unless the court has jurisdiction and the claim needs no new jurisdictional support." Fed. R. Civ. P. 8(a)(1).

Plaintiff alleges that "[t]his Court has subject matter jurisdiction over this action pursuant to 28 U.S.C[. §] 1331 because the Plaintiff's claim under the Duty to Warn Act raises federal questions." Filing No. 1 at 4, ¶ 21. Plaintiff does not specifically identify the federal laws comprising the "Duty to Warn Act," and the Court is unaware of, and has

been unable to find, any federal law that goes by such a name.  In Count 3 of the Complaint, Plaintiff alleges a cause of action based on "Public Nuisance Neb. Rev. Stat. 28-1321 and Federal CSA," but again he does not specifically identify the federal law at issue nor do the factual allegations associated with Count 3 suggest what federal law may be at issue.  Filing No. 1 at 13–15, ¶¶ 74–90.  To the extent "Federal CSA" may be a reference to the Controlled Substances Act, 21 U.S.C. §§ 801, *et seq.* ("CSA"), "the CSA does not provide a private, federal cause of action[]." *Pulaski Cnty. v. Walmart Inc.*, No. 4:20-CV-00983 JM, 2020 WL 5746845, at *2 (E.D. Ark. Sept. 25, 2020).  Thus, Plaintiff's Complaint does not identify any federal laws at issue that establish the requisite "federal question" for the Court to exercise jurisdiction under 28 U.S.C. § 1331.

However, subject-matter jurisdiction also may be proper in federal court pursuant to 28 U.S.C. § 1332, commonly referred to as "diversity of citizenship" jurisdiction.  For purposes of 28 U.S.C. § 1332, "diversity of citizenship" means that "the citizenship of each plaintiff is different from the citizenship of each defendant."  *Ryan v. Schneider Nat'l Carriers, Inc.*, 263 F.3d 816, 819 (8th Cir. 2001) (citation omitted).  In addition, the amount in controversy must be greater than $75,000.00 for diversity of citizenship jurisdiction.  28 U.S.C. § 1332(a).  Construed liberally, Plaintiff's allegations are sufficient to invoke the Court's diversity jurisdiction.  *See* Filing No. 1 at 3–4, ¶¶ 19–20 (listing Nebraska address for Plaintiff and New Jersey address for Church & Dwight); *Id.* at 18 (requesting $50,000,000.00 in damages).

The Court, therefore, will turn to the question of whether Plaintiff's Complaint has alleged a plausible claim upon which relief may be granted.  In reviewing Plaintiff's claims, the Court will apply Nebraska law, as interpreted by the Nebraska Supreme Court.  *See*

4

*JN Exploration & Production v. Western Gas Resources, Inc.*, 153 F.3d 906, 909 (8th Cir. 1998) ("[I]t is axiomatic that the federal courts apply state substantive law in diversity suits."); *Foy v. Klapmeier*, 992 F.2d 774, 780 (8th Cir. 1993) ("[A] federal court with diversity jurisdiction is bound only by state law as determined by the highest state court.").

### B.  Products Liability Claim

Plaintiff alleges he developed an addiction to crack cocaine and suffered injuries as a result of Church & Dwight's failure to warn about the dangers and consequences of mixing cocaine with baking soda to produce crack cocaine.  Liberally construed, Plaintiff alleges a products liability claim under Nebraska law.  *See* Neb. Rev. Stat. § 25-21,180 ("Product liability action shall mean any action brought against a manufacturer, . . . regardless of the substantive legal theory or theories upon which the action is brought, for or on account of personal injury . . . caused by or resulting from . . . the failure to warn or protect against a danger or hazard in the use, misuse, or intended use of any product, or the failure to provide proper instructions for the use of any product.").  For the reasons that follow, Plaintiff's products liability claim is barred by the applicable statute of limitations, and the Complaint's allegations are insufficient to allege a plausible products liability claim upon which relief may be granted.

#### 1. Claim is Time-Barred

In Nebraska, "[a]ll product liability actions . . . [subject to an inapplicable exception] shall be commenced within four years next after the date on which the death, injury, or damage complained of occurs."  Neb. Rev. Stat. § 25-224.  Plaintiff alleges that he has suffered injuries by developing an addiction to crack cocaine.  *See, e.g.*, Filing No. 1 at 6–7, ¶¶ 41–42 (Plaintiff "found himself constantly smoking crack," and he "began

committing varies [sic] types of crimes to support his crack habit, that caused him to go in and out of federal and state prisons for approximately . . . 20 years[,] [e]ach time . . . abandon[ing] his wife and children."). Plaintiff affirmatively alleges, however, that he developed his addiction to crack cocaine, and knew he was addicted, by 1996 at the latest. *Id.* at 7, ¶ 43 ("It was not until 1996, when the Plaintiff was serving a federal sentencing [sic] that he realized that the strong constant craving to smoke crack, was actually an addiction he had been battling since the first day he smoked crack cocaine."). Thus, to the extent "the injury or damage complained of" is Plaintiff's addiction to crack cocaine, Plaintiff's claim is untimely. *See Condon v. A. H. Robins Co.*, 217 Neb. 60, 68, 349 N.W.2d 622, 627 (1984) ("the 4-year statute of limitations set forth in § 25-224(1) begins to run on the date on which the party holding the cause of action discovers, or in the exercise of reasonable diligence should have discovered, the existence of the injury or damage").

### 2. *No Duty to Warn Against Criminal Misuse of Product*

Notwithstanding the statute of limitations bar, Plaintiff's products liability claim based on Church & Dwight's alleged failure to warn of the dangers and consequences of mixing powder cocaine with Arm & Hammer Baking Soda fails as a matter of law. Whether premised on a theory of negligence or strict liability, manufacturers have a duty to warn consumers of the dangers of their products. *Freeman v. Hoffman–La Roche, Inc.*, 618 N.W.2d 827, 841 (Neb. 2000); *Haag v. Bongers*, 589 N.W.2d 318, 329 (Neb. 1999). They also have a "duty to warn with respect to foreseeable misuse of a product." *Haag*, 589 N.W.2d at 329 (internal quotation omitted). However, "the law is clear that manufacturers have no duty to warn of the potential consequences for criminal misuse of

6

their products." *Ward v. Arm & Hammer*, 341 F. Supp. 2d 499, 501 (D.N.J. 2004); *see also* Am. L. Prod. Liab. 3d § 32:48 ("a manufacturer has no duty to warn that its product may be susceptible to criminal misuse").

The analogous case of *Ward v. Arm & Hammer*, *supra*, is instructive and persuasive. In *Ward*, the pro se plaintiff filed suit against Church & Dwight asserting that they "should be held liable for failing to include a warning on the package regarding the consequences of criminally misusing baking soda with cocaine to manufacture crack cocaine." *Ward*, 341 F. Supp. 2d at 500. The United States District Court for the District of New Jersey granted Church & Dwight's motion to dismiss under Fed. R. Civ. P. 12(b)(6), concluding that, where the plaintiff was aware "that distribution of crack cocaine was unlawful [and] that ingestion of crack cocaine was harmful," Church & Dwight "had no duty to warn Plaintiff of that which he knew, and that which the law already charged him with knowing." *Id.* at 501.

This Court reached a similar conclusion in *Rowe v. Pfizer et al*, 4:06-cv-03124-RGK-PRSE (D. Neb. Jan. 4, 2007) (Filing No. 21). In *Rowe*, the plaintiff alleged that he had been fighting an addiction to methamphetamine for five years, and that methamphetamine is made by extracting an ingredient from the defendants' cold remedy product, Sudafed. The plaintiff sought damages against the defendants on theories of product liability and negligence. In granting the defendants' motion to dismiss, the Court applied Nebraska law and concluded "in the context of a negligence action, the defendants owe the plaintiff no duty to prevent him from misusing their product, particularly in a criminal manner." Filing No. 21, Case No. 4:06-cv-03124.

Like the plaintiff in *Ward*, Plaintiff does not allege that he was unaware that the production or use of crack cocaine was unlawful. Rather, he acknowledges that "powder cocaine is considered a controlled substance." Filing No. 1 at 7, ¶ 45. In fact, under Nebraska law, cocaine is a Schedule II controlled substance, Neb. Rev. Stat. § 28-405, and is further classified as an "exceptionally hazardous drug." Neb. Rev. Stat. § 28-401(16), (29). Except as prescribed by an authorized health care practitioner, possession of a controlled substance, including cocaine, is a Class IV felony. Neb. Rev. Stat. § 28-416(3). It is also a criminal offense to manufacture a controlled substance, Neb. Rev. Stat. § 28-416(1), and the manufacture of "base cocaine (crack) or any mixture or substance containing a detectable amount of base cocaine" is punishable as a Class 1D, 1C, or 1B felony depending on the quantity involved, Neb. Rev. Stat. § 28-416(8). Under Nebraska law, every person is presumed to know the law, including the criminal laws. *See, e.g.*, *State v. Jonusas*, 694 N.W.2d 651, 657 (Neb. 2005); *Bauers v. City of Lincoln*, 586 N.W.2d 452, 462 (Neb. 1998). Thus, "Church & Dwight had no duty to warn Plaintiff of that which he knew, and that which the law already charged him with knowing." *Ward*, 341 F.Supp.2d at 501.

Plaintiff attempts to avoid the conclusion that mixing baking soda with cocaine constitutes misuse of Church & Dwight's product by alleging that Church & Dwight "cannot claim that the harm stemming from the mixture of Arm & Hammer Baking Soda is a result of the unintended, improper, misuse[] and/or alteration of the product" because "Defendant has never told users what Arm & Hammer Baking Soda was truly intended for or the proper use of the product." Filing No. 1 at 9, ¶¶ 60–61. However, Plaintiff's conclusory allegation is directly contradicted by the well-pled factual allegations in his

Complaint regarding Church & Dwight's representations about their product's uses, which consist entirely of only "household uses," primarily cleaning. Filing No. 1 at 9–12. Plaintiff even acknowledges that Arm & Hammer Baking Soda was advertised as "a safe and friendly *household* product." Id. at 3, ¶ 18 (emphasis added). Moreover, Church & Dwight's marketing of its product as being "all purpose" and having "hundreds of uses" in no way suggests that the product was intended to be used in a criminal manner. The court in Ward rejected a similar argument advanced by the plaintiff there and reasoned:

> As the Third Circuit stated in *Port Authority of New York and New Jersey v. Arcadian Corp.*,[ 189 F.3d 305, 313 (3d Cir.1999),] "manufacturers have no duty to prevent a criminal misuse of their products which is entirely foreign to the purpose for which the product was intended." Plaintiff himself acknowledges and concedes that "baking soda is not a product that its primary designed, is intended for the production for illegal drug use or distribution." [sic] (Pl. Complaint at 2) (emphasis added). Plaintiff contends though, that "it can not be said that the use of this product to make Crack Cocaine is foreign anymore, this is well established knowledge that is a commercial product now for years." (Pl. Response Br. at 11). However, the court in *Port Authority* stated that "the manufacturer of a raw material or component part that is not itself dangerous has no legal duty to prevent a buyer from incorporating the material or part into another device that is or may be dangerous." 189 F.3d at 313.

*Ward*, 341 F. Supp. 2d at 501 (footnote omitted).

The Court finds the reasoning in Ward persuasive and reaches the same conclusion here. The mixing of powder cocaine with Arm & Hammer Baking Soda is a criminal misuse of Church & Dwight's product, and Church & Dwight had no duty to warn Plaintiff of the dangers or consequences of such criminal misuse. Thus, Plaintiff's Complaint fails to state a products liability claim upon which relief may be granted, and such claim is dismissed.

## C. Public Nuisance Claim

Plaintiff also alleges a public nuisance claim under Neb. Rev. Stat. § 28-1321, which provides, in relevant part, that "[a] person commits the offense of maintaining a nuisance if he erects, keeps up or continues and maintains any nuisance to the injury of any part of the citizens of this state." Neb. Rev. Stat. § 28-1321(1). A person who violates § 28-1321 is guilty of a Class III misdemeanor. Neb. Rev. Stat. § 28-1321(4). The Nebraska courts define a public nuisance as follows:

> The Supreme Court stated by way of a quote from the Restatement (Second) of Torts § 821B (1979) that a public nuisance is "'an unreasonable interference with a right common to the general public.'" *State ex rel. Spire v. Strawberries, Inc.*, 239 Neb. 1, 9, 473 N.W.2d 428, 435 (1991). At the same time, the court stated: "[P]ublic nuisance 'comprehends a miscellaneous and diversified group of minor criminal offenses, based on some interference with the interests of the community [and] includes interferences with . . . public morals.'" *Id.*, quoting W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 90 (5th ed. 1984).

> The Restatement, *supra* at 87, cited favorably in *State ex rel. Spire, supra*, goes on to state:

> (2) Circumstances that may sustain a holding that an interference with a public right is unreasonable include the following:

> (a) whether the conduct involves a significant interference with the public health, the public safety, the public peace, the public comfort or the public convenience, or

> (b) whether the conduct is proscribed by a statute, ordinance or administrative regulation, or

> (c) whether the conduct is of a continuing nature or has produced a permanent or long-lasting effect, and, as the actor knows or has reason to know, has a significant effect upon the public right.

> To further explain what constitutes interference with a public right, the Restatement, *supra*, comment *g*. at 92, states:

> Conduct does not become a public nuisance merely because it interferes with the use and enjoyment of land by a large number of

persons.  There must be some interference with a public right.  A public right is one common to all members of the general public.  It is collective in nature and not like the individual right that everyone has not to be assaulted or defamed or defrauded or negligently injured.  Thus the pollution of a stream that merely deprives fifty or a hundred lower riparian owners of the use of the water for purposes connected with their land does not for that reason alone become a public nuisance.  If, however, the pollution prevents the use of a public bathing beach or kills the fish in a navigable stream and so deprives all members of the community of the right to fish, it becomes a public nuisance.

*County of York v. Tracy*, 558 N.W.2d 815, 823–24 (Neb. Ct. App. 1996).

Liberally construed, Plaintiff alleges that Church & Dwight's failure to warn of the dangers of mixing Arm & Hammer Baking Soda with cocaine to produce crack cocaine and their advertising of their product "as a harmless household product" "intentionally, recklessly, or negligently helped create and maintain the crack epidemic in Nebraska and other states, . . . thereby unreasonably annoying, injuring and endangering the safety, health, morals, and comfort of the people in Nebraska, as well as people across the nation."  Filing No. 1 at 14, ¶¶ 75–76.  Upon consideration, the Court finds that the Complaint's allegations fail to establish that Church & Dwight's conduct constitutes a public nuisance under the definition above.  As discussed above, Church & Dwight have no duty to warn Plaintiff of the dangers of criminally misusing baking soda so it follows that the failure to warn about such criminal misuse does not unreasonably interfere with any right common to the general public.  The Court will, therefore, dismiss Plaintiff's public nuisance claim for failure to state a claim upon which relief may be granted.

**D. Misleading Advertising Claim**

Finally, Plaintiff alleges a misleading advertising claim pursuant to Neb. Rev. Stat. § 28-1477, which states:

11

For the purpose of section 28-1476[1] any person, firm, corporation, or association shall be deemed guilty of deceptive or misleading advertising that makes, publishes, disseminates, circulates, or places before the public, or causes, directly or indirectly, to be made, published, disseminated, circulated, or placed before the public in this state, in a newspaper or other publication, or in the form of a book, notice, handbill, poster, bill, circular, pamphlet, or letter, or in any other way, an advertisement of any merchandise for sale at retail at less than original actual cost or less than original replacement cost, whichever is lower, if the merchant does not have a sufficient quantity of merchandise to meet the reasonable expected demand, or the advertisement either (1) fails to state in such advertisement the quantity of merchandise available for sale, or (2) fails to state that the advertiser is discontinuing the item.

Nowhere in Plaintiff's Complaint does he allege that Church & Dwight advertised Arm & Hammer Baking Soda for sale at less than actual or replacement cost without sufficient quantity to meet the demand or that Church & Dwight failed to advertise the quantity of product available for sale of failed to state that the product would be discontinued.  Thus, the Complaint fails to allege any violation of Neb. Rev. Stat. § 28-1477.

To the extent Plaintiff alleges Church & Dwight's advertising of Arm & Hammer Baking Soda as a safe, all-purpose household product was misleading, *see* Filing No. 1 at 16–17, ¶¶ 93–98, his allegations are, again, based on the faulty premise that Church & Dwight had a duty to warn Plaintiff and others of the foreseen dangers and consequences of mixing baking soda with powder cocaine to make crack cocaine.  As previously stated, Church & Dwight owe no such duty and the allegations of Plaintiff's Complaint fail to suggest that Church & Dwight's advertising of their product as a safe,

---

[1] Section 28-1476 makes it unlawful for any person, firm, corporation, or association to make or publish an advertisement of any sort regarding merchandise that contains "any assertion, representation, or statement of fact which is known to be untrue, deceptive, or misleading."  Neb. Rev. Stat. § 28-1476.

household product was untrue, deceptive, or misleading. Accordingly, Plaintiff's misleading advertising claim will be dismissed.

## IV. CONCLUSION

Plaintiff's Complaint fails to allege plausible claims for failure to warn, public nuisance, or misleading advertising against Church & Dwight. Additionally, Plaintiff's claims for injuries stemming from his addiction to crack cocaine are barred by Nebraska's four-year product liability statute of limitations. The Court will, therefore, dismiss Plaintiff's Complaint with prejudice as any further amendment would be futile.

IT IS THEREFORE ORDERED that:

1.    This matter is dismissed with prejudice.

2.    Plaintiff's pending Motion to Expedite, Filing No. 6, is denied as moot.

3.    A separate judgment will be entered.


Dated this 14th day of April, 2023.


BY THE COURT:

Joseph F. Bataillon
Senior United States District Judge